# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

RECEIVED
BY MAIL
JAN 11 2012
CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

Wallace James Beaulieu

(Enter the full name of **ALL** plaintiff(s) and prisoner

Number(s) in this action)

Vs.

Civil No.  11-cv-2755 (DWF/JSM)

Lucinda Jesson, Dennis Benson,

Kevin Moser, Elizabeth Barbo**,**

Kevin Browne, Tracy Gebhart,

Susan Johnson, Scott Benoit,

Terry Kniesel, Blake Carey,

Julianna Beavons, William Gullickson,

Sara Kulas, Jim Lind,

Mark Wilmes, Ann Zimmerman,

Laurie Severson, Ralph Schmidt,

Jamie Jungers, Beth Virden,

Thane Murphy, Diana Maagard,

Robert Rose, Brian Ninneman,

Thomas Lundquist, Yvette Anderson,

Tara Osborne, Kelli Miner,

Kent Johannsen, Teresa Kneis,

Jane Stinar, Jason Rengo,

Greg Swenson, Colleen Fallon,

John Doe Staff, and Jane Doe Staff,

## AMENDED

**COMPLAINT FOR VIOLATION**

**OF CIVIL RIGHTS UNDER**

**42 U.S.C § 1983**

SCANNED
JAN 1 2 2012
U.S. DISTRICT COURT ST. PAUL

*In their official and personal capacities*

Defendants.

## I.  PREVIOUS LAWSUITS

A     Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment in the last three years?

_____Yes          __XX__ No

B      If your answer to A is Yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1.  Parties to this previous lawsuit:

Plaintiffs:          None_____.

Defendants:          None_____.

2.  Court (if federal court, name the district. If state court, also name the county)

_____Not Applicable_____.

3.  Case Number:  Not Applicable_____.

4.  Name of judge to whom case was assigned:  Not Applicable_____.

5.  Cause of Action (Cite statute under which you filed and write a brief statement of the case):

_____Not Applicable_____.

6.  Disposition (For example: was the case dismissed? Appealed? Still pending?)

_____Not Applicable_____.

7.  Approximate date of filing of lawsuit:  Not Applicable_____.

8.  Approximate date of disposition:  Not Applicable_____.

2

9.  Attach copy of disposition if not from Federal District Court of Minnesota.

## II.   PLACE OF PRESENT CONFINEMENT

A.  Is there a prisoner grievance procedure in the institution?

_____Yes            _____No   __XX__Not Applicable

B.  Did you present the facts relating to your complaint in the prisoner grievance procedure?

_____Yes            _____No   __XX__Not Applicable

C.  If your answer is Yes:

1.       What steps did you take?     Not Applicable                         .

2.       What was the result?         Not Applicable                      .

3.       Attach a copy of the disposition.

D.  If your answer is No, explain why not:

The MSOP does not have an adequate grievance system for addressing this violation of Due Process. The grievances are dealt with by the same parties complained about, and are routinely "affirmed" without any adequate Review or Due Process, as will be shown throughout the discovery process.

## III.  PARTIES

(In Item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs)

A.  Name of Plaintiff:          Wallace James Beaulieu

Address:                 1111 Hwy 73, Moose Lake, MN 55767

Additional Plaintiffs:         None

(In Item B below, place the full name of the defendant in the first blank, official position in the second blank, and place of employment in the third blank. Do the same for all additional defendants, using a separate page if necessary)

B.  Name of Defendant:          Lucinda Jesson

    Employed as:          Commissioner

    At:          Minnesota Department of Human Services


Additional Defendants:

                 Dennis Benson

    Employed as:          Chief Executive Officer

    At:          Minnesota Sex Offender Program


                 Kevin Moser

    Employed as:          Director MSOP-Moose Lake Site

    At:          Minnesota Sex Offender Program


                 Elizabeth Barbo

    Employed as:          Assistant Director MSOP-Moose Lake Site

    At:          Minnesota Sex Offender Program


                 Kevin Browne

    Employed as:          Behavior Expectations Unit Supervisor

    At:          Minnesota Sex Offender Program


                 Tracy Gebhart

    Employed as:          Behavior Expectations Unit

    At:          Minnesota Sex Offender Program


                 Susan Johnson

    Employed as:          Program Manager MSOP-Moose Lake Site

    At:          Minnesota Sex Offender Program


                 Scott Benoit

    Employed as:          Program Manager MSOP-Moose Lake Site

    At:          Minnesota Sex Offender Program

4

Terry Kniesel
Employed as:          Program Manager MSOP-Moose Lake Site
At:                  Minnesota Sex Offender Program

Blake Carey
Employed as:          Assistant Group Supervisor
At:                  Minnesota Sex Offender Program

Julianna Beavens
Employed as:          Group Supervisor
At:                  Minnesota Sex Offender Program

William Gullickson
Employed as:          Assistant Group Supervisor
At:                  Minnesota Sex Offender Program

Sara Kulas
Employed as:          Assistant Group Supervisor
At:                  Minnesota Sex Offender Program

Jim Lind
Employed as:          Assistant Group Supervisor
At:                  Minnesota Sex Offender Program

Mark Wilmes
Employed as:          Security Consultant
At:                  Minnesota Sex Offender Program

Ann Zimmerman
Employed as:          Security Director
At:                  Minnesota Sex Offender Program

Laurie Severson

Employed as:          Security Supervisor

At:                   Minnesota Sex Offender Program

Ralph Schmidt

Employed as:          Office of Special Investigations

At:                   Minnesota Sex Offender Program

Jamie Jungers

Employed as:          Office of Special Investigations

At:                   Minnesota Sex Offender Program

Beth Virden

Employed as:          Office of Special Investigations

At:                   Minnesota Sex Offender Program

Thane Murphy

Employed as:          Office of Special Investigations

At:                   Minnesota Sex Offender Program

Diana Maagard

Employed as:          Office of Special Investigations

At:                   Minnesota Sex Offender Program

Robert Rose

Employed as:          Unit Director, Complex 1-D

At:                   Minnesota Sex Offender Program

Brian Ninneman

Employed as:          Unit Director, Omega Unit

At:                   Minnesota Sex Offender Program

Thomas Lundquist

Employed as:          Clinical Director

At:                   Minnesota Sex Offender Program

<u>Yvette Anderson</u>

Employed as:        Clinical Supervisor

At:                 Minnesota Sex Offender Program

<u>Tara Osborne</u>

Employed as:        Clinical Supervisor

At:                 Minnesota Sex Offender Program

<u>Kelli Miner</u>

Employed as:        Senior Clinician

At:                 Minnesota Sex Offender Program

<u>Kent Johannsen</u>

Employed as:        Senior Clinician

At:                 Minnesota Sex Offender Program

<u>Teresa Kneis</u>

Employed as:        Senior Clinician

At:                 Minnesota Sex Offender Program

<u>Jane Stinar</u>

Employed as:        Security Counselor Lead, Unit 1-D

At:                 Minnesota Sex Offender Program

<u>Jason Rengo</u>

Employed as:        Security Counselor

At:                 Minnesota Sex Offender Program

<u>Greg Swenson</u>

Employed as:        Security Counselor

At:                 Minnesota Sex Offender Program

<u>Colleen Fallon</u>

Employed as:        Security Counselor

At:                 Minnesota Sex Offender Program

<u>John Doe Staff</u>

Employed as:          Security Counselor

At:          Minnesota Sex Offender Program

<u>Jane Doe Staff</u>

Employed as:          Security Counselor

At:          Minnesota Sex Offender Program

Lucinda Jesson is the Commissioner of the Department of Human Services, and is responsible for oversight of the Minnesota Sex Offender Program.

Dennis Benson is the Chief Executive Officer of the Minnesota Sex Offender Program, and is responsible for the overall decision-making and Policy decisions that pertain to the Minnesota Sex Offender Program and the Conditions complained of in this complaint.

Kevin Moser is the Director of the Minnesota Sex Offender Program-Moose Lake Site, and is responsible for administering the policies complained of, and is directly responsible for oversight of the entire Moose Lake Facility. Mr. Moser is also responsible for addressing any Appeals to the B.E.R. hearings and the violations found by the Hearing panel.

Elizabeth Barbo is the Assistant Director of the Moose Lake Facility, and is responsible for the day-to-day Operations, and supervision of the Employees of the Minnesota Sex Offender Program-Moose Lake Site.

Kevin Browne is the Supervisor of the Behavior Expectations Unit, and is responsible for the oversight of the Behavior Expectations Reports, and is directly involved in the hearing process, and overall supervision of the Behavior Expectations Unit.

Tracy Gebhart is a Behavior Expectations Unit Lead at the Minnesota Sex Offender Program, and is responsible for addressing Behavior Expectations Reports prior to client's going to the hearings.

Susan Johnson is a Program Manager, and is responsible for Direct Supervision of Security Counselors employed at the Minnesota Sex Offender Program-Moose Lake Site. Mrs. Johnson is also directly involved in the Behavior Expectations Hearings; approving violation reports, and personally makes decisions as to the "alleged" guilt or innocence of clients accused of violating the Behavior Expectations Policy, and determining what level, and the duration of consequences to be imposed upon clients.

Scott Benoit is a Program Manager, and is responsible for Direct Supervision of Security Counselors employed at the Minnesota Sex Offender Program-Moose Lake Site. Mr. Benoit is also directly involved in the Behavior Expectations Hearings; approving violation reports, and personally makes decisions as to the "alleged" guilt or innocence of clients accused of violating the Behavior Expectations Policy, and determining what level, and the duration of consequences to be imposed upon clients.

Terry Kniesel is a Program Manager, and is responsible for Direct Supervision of Security Counselors employed at the Minnesota Sex Offender Program-Moose Lake Site. Mr. Kniesel is also directly involved in the Behavior Expectations Hearings; approving violation reports, and personally makes decisions as to the "alleged" guilt or innocence of clients accused of violating the Behavior Expectations Policy, and determining what level, and the duration of consequences to be imposed upon clients.

Blake Carey is an Assistant Group Supervisor and is responsible for the day-to-day operations of the Minnesota Sex Offender Program, and is a Direct Supervisor of the Program Managers, and Security Counselors.

Julianna Beavens is a Group Supervisor, and is responsible for the day-to-day decisions regarding operations of the Minnesota Sex Offender Program, and is a Direct Supervisor of the MSOP Moose Lake Program Managers, and Security Counselors.

William Gullickson is an Assistant Group Supervisor and is responsible for the day-to-day decisions regarding operations of the Minnesota Sex Offender Program, and is a Direct Supervisor of the Program Managers, and Security Counselors.

Sara Kulas is an Assistant Group Supervisor and is responsible for the day-to-day decisions regarding operations of the Minnesota Sex Offender Program, and is a Direct Supervisor of the Program Managers, and Security Counselors.

Jim Lind is an Assistant Group Supervisor and is responsible for the day-to-day decisions regarding operations of the Minnesota Sex Offender Program, and is a Direct Supervisor of the Program Managers, and Security Counselors.

Mark Wilmes is a "Security Consultant" for the Minnesota Sex Offender Program, and is responsible for advising MSOP with regard to matters of Security policies.

Ann Zimmerman is the Security Director, and is responsible for implementing the MSOP's Security protocols and is involved in Policy making decisions within the MSOP-Moose Lake Site.

Laurie Severson is the Security Supervisor, and is responsible for the overall day-to-day Supervision of the Security operations within the MSOP-Moose Lake Site.

Ralph Schmidt is the Director of the MSOP's Office of Special Investigations, and is directly responsible for Supervision of the Special Investigators assigned to investigate allegations of criminal activity by clients of the MSOP. Mr. Schmidt also has Authority to bring criminal charges against MSOP clients in the State District Court for allegations of criminal conduct.

Jamie Jungers is a Supervisor in the Office of Special Investigations, and is directly responsible for oversight of the Investigations conducted by Employees of the MSOP's Special Investigations Office. Mr. Jungers also has Authority to bring criminal charges against MSOP clients in the State District Court for any allegations of criminal conduct.

Beth Virden is a Special Investigator for the Office of Special Investigations at the MSOP-Moose Lake Site, and is responsible for investigating allegations of criminal activity by clients of the MSOP.

Thane Murphy is a Special Investigator for the Office of Special Investigations at the MSOP-Moose Lake Site, and is responsible for investigating allegations of criminal activity by clients of the MSOP.

Diana Maagard is a Special Investigator for the Office of Special Investigations at the MSOP-Moose Lake Site, and is responsible for investigating allegations of criminal activity by clients of the MSOP.

Robert Rose is the Unit Director for Complex Unit-1D, and is responsible for Supervising the Security Counselors assigned to Complex Unit-1D. Mr. Rose is also responsible for the day-to-day decision-making regarding overall operations of Complex Unit-1D. Mr. Rose also has the Authority to approve the Behavior Expectations Violations reports written by the Security Counselors.

Brian Ninneman is the Unit Director for Unit Omega, and is responsible for Supervising the Security Counselors assigned to Unit Omega. Mr. Ninneman is also responsible for the day-to-day decision-making

regarding overall operations of Unit Omega. Mr. Ninneman also has the Authority to approve the Behavior Expectations Violations reports written by the Security Counselors.

Thomas Lundquist is the Clinical Director at the MSOP-Moose Lake Site, and is responsible for the overall treatment programming within the MSOP-Moose Lake Facility. Mr. Lundquist is also directly involved in the decision-making and the implementation of the policies complained of.

Yvette Anderson is a Clinical Supervisor, and is responsible for the Supervision of the Clinicians at the MSOP-Moose Lake Site. Ms. Anderson is also directly involved in the B.E.R. hearings, and personally makes decisions as to the "alleged" guilt or innocence of clients accused of violating the Behavior Expectations Policy, and determining what level, and the duration of consequences to be imposed upon clients.

Tara Osborne is a Clinical Supervisor, and is responsible for the Supervision of the Clinicians at the MSOP-Moose Lake Site. Mrs. Osborne is also directly involved in the B.E.R. hearings, and personally makes decisions as to the "alleged" guilt or innocence of clients accused of violating the Behavior Expectations Policy, and determining what level, and the duration of consequences to be imposed upon clients.

Kelli Miner is a Senior Clinician, and is responsible for facilitating the MSOP's treatment program. Mrs. Miner is also directly involved in many of the Behavior Expectations Violations complained about.

Kent Johannsen is a Senior Clinician, and is responsible for facilitating the MSOP's treatment program. Mr. Johannsen is Plaintiff's Primary Therapist, and is directly responsible for plaintiff's individual treatment.

Teresa Kneis is a Senior Clinician, and is responsible for facilitating the MSOP's treatment program. Mrs. Kneis is also directly involved in many of the Behavior Expectations Violations complained about.

Jane Stinar is a Security Counselor Lead on Complex Unit 1D, and is responsible for the day-to-day operations within the Living Units. Mrs. Stinar is directly involved in writing some of the Behavior Expectations Reports complained about.

Jason Rengo is a Security Counselor at the MSOP-Moose Lake Site, and is directly involved in writing some of the Behavioral Expectations Reports complained about.

Greg Swenson is a Security Counselor at the MSOP-Moose Lake Site, and is directly involved in writing some of the Behavioral Expectations Reports complained about.

Colleen Fallon is a Security Counselor at the MSOP-Moose Lake Site, and is directly involved in writing some of the Behavioral Expectations Reports complained about.

John Doe Staff are Male Security Counselors by the MSOP, and are directly involved in writing some of the Behavioral Expectations Reports complained about, but plaintiff did not have access to the Incident reports to name them *personally* in each claim. Many of the claims are based upon an 11-page record of Behavioral Expectations Reports kept and maintained by the MSOP, and they do not specifically name the staff involved in each report.

Jane Doe Staff are Female Security Counselors by the MSOP, and are directly involved in writing some of the Behavioral Expectations Reports complained about, but plaintiff did not have access to the Incident reports to name them *personally* in each claim. Many of the claims are based upon an 11-page record of Behavioral Expectations Reports kept and maintained by the MSOP, and they do not specifically name the staff involved in each report.

## IV.  STATEMENT OF CLAIM

Provide a concise summary of the **facts** on which your claim is based. Describe how **each individual** defendant is personally involved, including dates, places, and specific wrongful acts or omissions of each defendant. Each factual allegation should be set forth in a separate numbered paragraph. (All paragraphs in the "STATEMENT OF CLAIM" should be consecutively numbered.) Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.

1.      On September 08, 2009, plaintiff received a Behavioral Expectations Report (hereinafter "B.E.R.") from a John Doe Staff or Jane Doe Staff alleging that plaintiff was "overheard making derogatory and disrespectful comments at mealtime". After an *Informal Review*, plaintiff was given an RS1 "Gym restriction" for 7 days, a punishment which had absolutely nothing to do with the allegations. Plaintiff was not given access to the Incident Reports for which this violation was based upon. Plaintiff was not allowed call witnesses, nor to question those who wrote the reports. Plaintiff has a Liberty interest in access to exercise/recreation and access to the Facility. Defendants's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As plaintiffs civil rights were restored, and he is not being held pursuant to any

"criminal conviction", the State has no right to punish him. The B.E.R. policy lacks any "treatment" component and fails to indicate any therapeutic goal to address the *alleged* behavior which led to the violation report.

2.       On September 14, 2009, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff alleging that plaintiff was "wasting energy or resources" for making food offerings in accordance with his religious beliefs. Plaintiff received an RS1 "Gym restriction" for 2 days, a punishment which had absolutely nothing to do with the allegations. Plaintiff did not "accept" the minor violation as stated in plaintiff's B.E.R. history. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed a hearing on the matter. Plaintiff has a Liberty interest in access to exercise/recreation and access to the Facility. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. This also violates plaintiff's right under the 1st Amendment to freely practice his religion. As plaintiffs civil rights were restored, and he is not being held pursuant to any "criminal conviction", the State has no right to punish him. The B.E.R. policy lacks any "treatment" component and fails to indicate any therapeutic goal to address the *alleged* behavior which led to the violation report.

3.       On September 15, 2009, plaintiff received a second B.E.R. from a John Doe Staff or Jane Doe Staff alleging that plaintiff was "wasting energy or resources" for making food offerings in accordance with his religious beliefs. Plaintiff received an RS1 "Courtyard Restriction" for 4 days with one "½ hour break" per day. Plaintiff did not "accept" the minor violation as stated in plaintiff's B.E.R. history. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed a hearing on the matter. Plaintiff has a Liberty interest in access to exercise/recreation and access to the Facility. Even "prisoners" confined in *punitive segregation* are allowed access to an hour of fresh air per day. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. This action also violates plaintiff's right under the 1st Amendment to freely practice his religion. As plaintiffs civil rights were restored, and he is not being held pursuant to any "criminal conviction", the State has no right to punish him. The B.E.R. policy lacks any "treatment" component and fails to indicate any therapeutic goal to address the *alleged* behavior which led to the violation report.

4.      On September 25, 2009, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *disorderly conduct* and *disobeying a staff directive* for allegedly "becoming loud and swearing about staff on the unit". Plaintiff denied these allegations and opted to have a hearing. He was found guilty by the B.E.U. hearing panel, and received a consequence of RS2 for 10 days. Plaintiff was not given access to the Incident Reports for which this violation was based upon. Plaintiff was not allowed to call witnesses to the hearing, nor was he allowed to question those who wrote the reports. RS2 restrictions *prohibit* access to off-unit activities. These "B.E.R." restrictions will be explained in more detail in the discovery process. Plaintiff was denied access to any off-unit activities for the duration of the 10-day restriction. As plaintiff has had his civil rights restored, he has a liberty interest in access to the Facility. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As a civilly committed detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express intent* to "punish" clients for behaviors that *may be* related to mental health, and the policy lacks any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him.


5.      On October 06, 2009, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *Failure to Comply* for his alleged "failure to attend Mandatory community meeting", and given an RS1 "Unit Computer Restriction" for 2 days, a punishment which had absolutely nothing to do with the allegations. Plaintiff did not "accept" the minor violation as stated in plaintiff's B.E.R. history. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed a hearing on the matter. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments. As plaintiffs civil rights were restored, and he is not being held pursuant to any "criminal conviction", the State has no right to punish him. The B.E.R. policy indicates an express intent to punish, and lacks any "treatment" component and fails to indicate any therapeutic goal to address the *alleged* behavior which led to the violation report.


6.      On October 14, 2009, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *disorderly conduct* for allegedly "continued negative behavior in regards to unmade legal calls up at the office". After an *Informal Review*, plaintiff was given a consequence of RS1

"office restriction" for 7 days, which limited his ability to conduct business such as filing grievances; submit requests for legal calls, or submit requests for access to the legal computer to 5 minutes each hour. Plaintiff was not given access to the Incident Reports for which this violation was based upon. Plaintiff was not allowed a formal hearing, was not allowed to call witnesses, nor was he allowed to question the Staff Member who wrote the report. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As a civilly committed detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express intent* to "punish", and the policies lack any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him.

7.      On October 20, 2009, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *Failure to Comply* for his alleged "failure to attend Mandatory community meeting", and given an RS1 "Unit Computer Restriction" for 1 day, a punishment which had absolutely nothing to do with the allegations. Plaintiff did not "accept" the minor violation as stated in plaintiff's B.E.R. history. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed a hearing on the matter. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments. As plaintiffs civil rights were restored, and he is not being held pursuant to any "criminal conviction", the State has no right to punish him. The B.E.R. policy indicates an express intent to punish, and lacks any "treatment" component and fails to indicate any therapeutic goal to address the *alleged* behavior which led to the violation report.

8.      On November 03, 2009, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *Failure to Comply* for his alleged "failure to attend Mandatory community meeting", and after an *Informal Review*, was given an RS1 "Unit Computer Restriction" for 4 days, a punishment which had absolutely nothing to do with the allegations. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed a formal hearing on the matter. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments. As plaintiffs civil rights were restored, and he is not being held pursuant to any "criminal conviction", the State has no right to punish him. The

B.E.R. policy indicates an express intent to punish, and lacks any "treatment" component and fails to indicate any therapeutic goal to address the *alleged* behavior which led to the violation report.

9.    On November 04, 2009, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *Disturbing Others* for allegedly being "In the kitchen area during lunch talking in a loud voice and using abusive language". After an *Informal Review*, plaintiff was given a consequence of RS1 "PS2 and Unit Computer Restriction" for 3 days, a punishment which had absolutely nothing to do with the allegations. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed a formal hearing on the matter. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments. As plaintiffs civil rights were restored, and he is not being held pursuant to any "criminal conviction", the State has no right to punish him. The B.E.R. policy indicates an express intent to punish, and lacks any "treatment" component and fails to indicate any therapeutic goal to address the *alleged* behavior which led to the violation report.

10.    On February 14, 2010, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *Abuse/Harassment* for allegedly "glaring at staff and telling them not to stare at him, and *indirectly* calling a certain staff a sex offender". Plaintiff denied these allegations, and opted to have a hearing on the matter. The B.E.U. hearing panel found plaintiff guilty and given a consequence of RS2 for 14 days. Plaintiff was not given access to the Incident Reports for which this violation was based upon. Plaintiff was not allowed to call witnesses, nor was he allowed to question the Staff Member who wrote the report. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As a civilly committed detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express intent* to "punish", and the policies lack any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him.

11.    On March 20, 2010, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *Failure to Comply* for allegedly "refusing to take his coat off of the exercise equipment and either sit on it or put it on his lap" while in the dining hall/Gym eating his meal. Plaintiff was given a RS1 "brown bag restriction" for 5 days, which denied him access to any hot meals for the duration of

the restriction. Plaintiff did not "accept" the minor violation as stated in plaintiff's B.E.R. history. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed a hearing on the matter. Plaintiff has a Liberty interest in having a hot meal. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments. As plaintiffs civil rights were restored, and he is not being held pursuant to any "criminal conviction", the State has no right to punish him. The B.E.R. policy indicates an express intent to punish, and lacks any "treatment" component and fails to indicate any therapeutic goal to address the *alleged* behavior which led to the violation report.

12.     On March 20, 2010, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with a second violation for *Failure to Comply* for allegedly "refusing to take his coat off of the exercise equipment" while in the dining hall/Gym eating his meal. Plaintiff was given a RS1 "brown bag restriction" for 5 days concurrent to the first restriction, which still denied him access to any hot meals for the duration of the restriction. Plaintiff did not "accept" the minor violation as stated in plaintiff's B.E.R. history. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed a hearing on the matter. Plaintiff has a Liberty interest in having a hot meal. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments. As plaintiffs civil rights were restored, and he is not being held pursuant to any "criminal conviction", the State has no right to punish him. The B.E.R. policy indicates an express intent to punish, and lacks any "treatment" component and fails to indicate any therapeutic goal to address the *alleged* behavior which led to the violation report.

13.     On March 20, 2010, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with a third violation for *Failure to Comply* for allegedly "taking his coat off and placing it on the seat directly behind him" while in the dining hall/Gym eating his meal. Plaintiff was given a RS1 "brown bag restriction" for 5 days concurrent to the first two restrictions, which still denied him access to any hot meals for the duration of the restriction. Plaintiff did not "accept" the minor violation as stated in plaintiff's B.E.R. history. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed a hearing on the matter. Plaintiff has a Liberty interest in having a hot meal. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments. As plaintiffs civil rights were restored, and he is not being held pursuant to any "criminal conviction", the State has no right to punish him. The

B.E.R. policy indicates an express intent to punish, and lacks any "treatment" component and fails to indicate any therapeutic goal to address the *alleged* behavior which led to the violation report.

14.    On March 20, 2009, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *Disobeying a Staff Directive* for allegedly "agreeing to fight with a fellow peer". After an *Informal Review,* he received a consequence of RS1 "Recreation Restriction" for 5 days. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed a formal hearing on the matter. Plaintiff was not allowed to call witnesses, nor was he allowed to question those who wrote the reports. Plaintiff was denied access to recreation for the 5 day restriction. Plaintiff has a liberty interest in access to recreation and access to the Facility. Plaintiff is entitled to Procedural Due Process before being denied access to exercise. Defendant's, who are acting *Under Color of State Law,* are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As a civilly committed detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express intent* to "punish" clients for behaviors that *may be* related to mental health, and the policy lacks any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him.

15.    On March 28, 2010, plaintiff received a B.E.R. from Security Counselor Jason Rengo charging plaintiff with *Abuse/Harassment* and *Disobeying a Staff Directive* for allegedly "calling a Staff a racist". Plaintiff denied these allegations, and opted to have a hearing on the matter. The hearing panel found plaintiff guilty, even though they agreed that the report didn't seem plausible, as the reporting staff "obviously"exaggerated his  allegations. Plaintiff was consequenced with RS2 for 7 days. Plaintiff was not given access to the Incident Reports for which this violation was based upon. Plaintiff was not allowed to call witnesses, nor was he allowed to question the Staff Member who wrote the report. Plaintiff has a liberty interest in access to recreation, and access to the Facility. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As a civilly committed detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express intent* to "punish", and the policies lack any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him.

16.     On April 29, 2010, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *Abuse/Harassment* and *Threatening Others* for allegations that "Client was informed of a procedural change to which he became argumentative and threatening to staff". Plaintiff denied these allegations, and opted to have a hearing on the matter. The hearing panel found plaintiff guilty, and Plaintiff was consequenced with RS3 for 21 days. Plaintiff was not given access to the Incident Reports for which this violation was based upon. Plaintiff was not allowed to call witnesses, nor was he allowed to question the Staff Members who wrote the reports. Plaintiff has a liberty interest in access to the Facility. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As a civilly committed detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express intent* to "punish", and the policies lack any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him.

17.     On June 15, 2010, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *Failure to Comply* for allegedly "arguing with his primary therapist about his phone (Legal) calls". Plaintiff denied these allegations, and opted to have a hearing on the matter. The hearing panel found plaintiff guilty, and Plaintiff was consequenced with RS2 for 7 days. Plaintiff was not given access to the Incident Reports for which this violation was based upon. Plaintiff was not allowed to call witnesses, nor was he allowed to question the Staff Members who wrote the reports. Plaintiff has a liberty interest in access to the Facility. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As a civilly committed detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express intent* to "punish", and the policies lack any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him.

18.     On September 17, 2010, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *Abuse/Harassment* and *Failure to Comply* for allegations that he "Approached the staff desk and proceeded to argue about his Legal calls". Plaintiff denied these allegations, and opted to have a hearing on the matter. The hearing panel dismissed the *Failure to Comply*, but found plaintiff

guilty of *Abuse/Harassment*, and Plaintiff was consequence with RS2 for 14 days. Plaintiff was not given access to the Incident Reports for which this violation was based upon. Plaintiff was not allowed to call witnesses, nor was he allowed to question the Staff Members who wrote the reports. Plaintiff has a liberty interest in access to the Facility. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As a civilly committed detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express intent* to "punish", and the policies lack any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him.

19.     On November 13, 2010, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *Failure to Comply* for allegations that "Client failed to comply with managed movement call out for the multi purpose room (MPR) and craft room". Plaintiff received a consequence of RS1 "MPR and craft room restriction" for 3 days. Plaintiff did not "accept minor violation" as stated in the B.E.R. history. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed a hearing on the matter. Plaintiff has a liberty interest in access to recreation, and in access to the Facility. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments. As a civilly committed detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express intent* to "punish", and the policies lack any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him.

20.     On November 11, 2010, plaintiff was taken "by force" to the High Security Area (H.S.A.) for "allegedly" assaulting another client, On November 12, 2010, Beth Virden from the Office of Special Investigations came to the High Security Area and interviewed plaintiff. After the interview, plaintiff was informed that he would be transferred to Omega Unit, which is called the "Behavior Therapy Unit" (hereinafter the "B.T.U.") and placed on administrative restriction. The B.T.U. is identical to what the Prison system calls a "Special Housing Unit". The basis for the administrative restriction was that plaintiff was "under investigation" for the *alleged* assault. During most of this 3 month period, due to his "administrative restriction" plan, plaintiff was restricted to his cell except for one 5 minute break per hour, and not allowed <u>any</u> additional outdoor recreation time. Plaintiff was <u>not</u> placed under arrest by the Moose Lake police department for the *alleged* assault. Plaintiff continually requested that he be formally

charged, or released from administrative restriction. MSOP Staff refused to address this request, claiming it was O.S.I. that would determine whether any charges would be brought against plaintiff. Plaintiff then requested O.S.I. to conclude their "investigation", and either charge him or release him from administrative restriction. Formal charges were not filed until January 21, 2011, which charged plaintiff with 1 count of 5th degree assault, a misdemeanor. All charges were later dismissed by the Carlton County District Court. At no time was plaintiff given an actual hearing to determine whether he was a danger to the population, or whether the level of restriction imposed upon plaintiff for 89 days was necessary. Defendant's, , who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments. Plaintiff's extended and severe restriction without Due Process constitutes cruel and unusual punishment in violation of the 8th Amendment. Plaintiff has a constitutional right to be free from "punishment". Plaintiff also has a Constitutional Right to Due Process before being subjected to severe sanctions within the facility.

21.     On April 20, 2011, plaintiff received a B.E.R. from a John Doe Staff or Jane Doe Staff charging plaintiff with *Interference with Security Procedures, Failure to Comply,* and *Abuse/Harassment* for allegations that "Client Beaulieu had to be prompted 3 times to go into his room during an Incident Command System (I.C.S.)". Plaintiff was immediately placed on Pre-hearing detention, which forced plaintiff to remain in his cell for the entire day, except for one 5 minute break per hour or at staff directive. Plaintiff denied these allegations, and opted to have a hearing on the matter. Plaintiff explained that he was already inside his doorway during this incident, and could not close his door until his cellmate returned to the cell. Plaintiff requested access to the camera footage to support his case, but was denied. The hearing panel dismissed the *Abuse/Harassment*, but found plaintiff guilty of *Interference with Security Procedures* and *Failure to Comply*, and Plaintiff was consequenced with RS3 for 21 days. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed to introduce the camera footage into evidence. Plaintiff was not allowed to call witnesses, nor was he allowed to question the Staff Members who wrote the reports. Plaintiff has a Liberty Interest in access to fresh air, and in access to the Facility. Plaintiff has a constitutional right to Procedural Due Process before being stripped of access to fresh air, exercise, and of access to the Facility. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As a civilly committed detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express*

*intent* to "punish", and the policies lack any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him.


22.     On April 21, 2011, plaintiff received a B.E.R. from Security Counselor Colleen Fallon charging plaintiff with *Abuse/Harassment*, *Disorderly Conduct*, and *Failure to Comply*. Security Counselor Colleen Fallon wrote a report that plaintiff was allegedly yelling "When is fucking water going to be turned on", and "You fucking need to be more fucking respectful". Plaintiff denied these allegations and opted to have a hearing. The hearing panel found plaintiff guilty, and Plaintiff was consequenced with RS3 for 21 days. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed to call witnesses, or to question the Staff Member who wrote the report. Plaintiff has a Liberty Interest in access to fresh air, and in access to the Facility. Plaintiff has a constitutional right to Procedural Due Process before being stripped of access to fresh air, exercise, and of access to the Facility. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As a civilly committed detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express intent* to "punish", and the policies lack any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him.


23.     On April 21, 2011, plaintiff received a B.E.R. from Security Counselor Colleen Fallon charging plaintiff with *Abuse/Harassment*, *Disorderly Conduct*, and *Failure to Comply*. Security Counselor Colleen Fallon wrote a report alleging that plaintiff "Client did not comply with directives to stop derogatory comments". Plaintiff was immeditaely placed on pre-hearing detention, with meals and medications in his cell, and 5-minute breaks at the top of each hour. Plaintiff denied these allegations and opted to have a hearing. The hearing panel found plaintiff guilty, and Plaintiff was consequenced with RS3 for 21 days. Plaintiff was not given access to the Incident Reports for which this violation was based upon, nor was he allowed to call witnesses, or to question the Staff Member who wrote the report. Plaintiff has a Liberty Interest in access to fresh air, and in access to the Facility. Plaintiff has a constitutional right to Procedural Due Process before being stripped of access to fresh air, exercise, and of access to the Facility. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As a civilly committed

detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express intent* to "punish", and the policies lack any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him.

24.     On July 15, 2011, a strong Thunderstorm knocked out the Power at Complex-1 of the Moose Lake Facility, and left clients without electricity, air, and running water for several hours. Supervisor Jim Lind instructed his staff to direct us to "switch in" to our cells. More than 70 clients on 4 different living units; including plaintiff, refused to "switch in" due to the lack of electricity, air, and running water, and the ability to open the door. Clients at the Moose Lake Facility; including plaintiff, are double-bunked with other civilly committed sex offenders. There have been multiple *confirmed* sexual assaults by clients against their roommates since the policy requiring clients to double bunk. Clients should not be forced to go into a dark room with no air or running water with another civilly committed "allegedly" dangerous sex offender, and have no way to access the door or intercom if something happens. Plaintiff felt that he should not have to be treated in this inhumane fashion, and chose not to go into the cell until Staff corrected the power issues. Plaintiff received a B.E.R. for his part in this incident. Plaintiff went to a hearing on July 01, 2011 at which he objected to the charges, as A.G.S. Jim Lind admitted that it was "his mistake" to direct us to switch in, as he was not made aware by Complex-1 Staff that there wasn't any electrical power in the cells. The Hearing panel; including Laurie Severson, and Terry Kniesel admitted that there were mistakes made with that situation, but found plaintiff guilty and sentenced him to 7 days of RS3. Plaintiff was not given access to the Incident Reports for which this violation was based upon. Plaintiff was not allowed to call witnesses to the hearing, nor was he allowed to question those who wrote the reports. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As a civilly committed detainee, plaintiff has a constitutional right to humane treatment, and the State has an obligation to keep plaintiff safe. As plaintiffs civil rights were restored, and he is not being held pursuant to any "criminal conviction", the State has no right to punish him. The B.E.R. policy lacks any "treatment" component, and fails to indicate any therapeutic goal to address the *alleged* behavior which led to the violation report.

25.     On July 18, 2011, Plaintiff had an "attorney visit" during the evening meal time. After the "attorney visit", plaintiff requested a meal. Plaintiff was informed by Security Counselor Greg Swenson

that; per a directive from Julianna Beavens, plaintiff would not be receiving an evening meal. Plaintiff requested to speak to a Supervisor, and was denied. Plaintiff then told staff to call an Incident Command System (hereinafter "I.C.S.") to get a Supervisor to the Unit to speak to plaintiff regarding his meal. Security counselor Greg Swenson called an "I.C.S.", and several "A-Team" members arrived on the Unit. Supervisors William Gullickson and Blake Carey came to the Unit to address the "I.C.S.". Plaintiff explained to William Gullickson that he was entitled to a meal, as the State is *required* to provide 3 meals per day to him. Mr. Gullickson told plaintiff that per Julianna Beavens' directive, he would not be receiving a meal, as he "chose" the attorney visit instead, and that his attorney visit was going to be treated as a regular visit. Mr. Gullickson then informed plaintiff that he would be receiving a Behavior Expectations Report (hereinafter "B.E.R.") for a unit disruption. On July 28, 2011, plaintiff went to a "Hearing" at which Kevin Browne, Yvette Anderson, Sue Johnson, and Jim Lind were the "B.E.R." committee. Plaintiff was not given access to the Incident Reports for which this violation was based upon. Plaintiff was not allowed to call witnesses to the hearing, nor was he allowed to question those who wrote the reports. Plaintiff was found guilty of "abuse/harassment", and received 21 days of Restriction Status 3 (hereinafter "RS3"). RS3 restrictions *prohibit* access to outdoor exercise, recreation, use of the vending machines and microwave, and *limited* access to the living unit. These "B.E.R." restrictions will be explained in more detail in the discovery process. Plaintiff appealed the decision to Facility Director Kevin Moser. 12 days later, plaintiff received a response from Mr. Moser *affirming* that restriction and another restriction appeal using the exact same language on both responses. Plaintiff was denied access to the courtyard for any fresh air break for the entire 21 day restriction. Even prisoners in "Segregation" for rule violations are allowed *at least* one hour of fresh air per day. Defendant's, who are acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. Facility Director Kevin Moser violated plaintiff's constitutional right to Due Process under the 5th and 14th Amendments when he *affirmed* the violation without any investigation into whether plaintiff was actually guilty of committing the violation. As a civilly committed detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express intent* to "punish" clients for behaviors that *may be* related to mental health, and the policy lacks any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him.

26.     On July 22, 2011, plaintiff received a B.E.R. from Senior Clinician Kelli Miner charging plaintiff with *Abuse/Harassment* and *Boundaries* for "allegedly" stating "she's getting fat on us… it's a

wonder she can get pregnant after having that stomach surgery". Plaintiff denied these allegations, and went to a hearing. At the July 28, 2011 hearing, plaintiff said that he was in a crowd of people, and was not the one who made that statement, but that Senior Clinician Kelli Miner singled him out of the crowd. The committee asked plaintiff if he would tell them "who did say it", but plaintiff declined. The members of committee; including Yvette Anderson, Sue Johnson, and Jim Lind found that while plaintiff maintained that he did not make this comment, he did not tell them who did, and did not intervene. Even though there were no witnesses to this *alleged* violation, plaintiff was found guilty, and given 21 days of RS3, concurrent with the violation described in #25 of this complaint. Plaintiff was not given access to the Incident Reports for which this violation was based upon. Plaintiff was not allowed to call witnesses to the hearing, nor was he allowed to question the Staff Member who wrote the report. Defendant's, who are  acting *Under Color of State Law*, are violating plaintiff's right to Procedural Due Process under the 5th and 14th Amendments, and their actions violate the Confrontation Clause of the 14th Amendment to the United States Constitution. As a civilly committed detainee, plaintiff has a constitutional right to be free from punishment. The B.E.R. policy indicates an *express intent* to "punish" clients, and the policies lack any indication of a therapeutic goal. Since plaintiff has completed his criminal sentence, the State has lost its right to "punish" him. This also violates the B.E.R. policy itself, because there is language in the B.E.R. policy that *requires* the committee to find by a "preponderance of the evidence" that a client *committed the violation* charged before imposing any sanctions. Facility Director Kevin Moser violated plaintiff's constitutional right to Due Process under the 5th and 14th Amendments when he *affirmed* the violation without any investigation into whether plaintiff was actually guilty of committing the violation.

## V.   RELIEF

State briefly exactly what you want the court to do for you:

Make no legal arguments. Cite no case or statutes.


Plaintiff requests compensatory damages in the amount of $200,000, and punitive damages in the amount of $1,000,000.00. Plaintiff also requests declaratory and injunctive relief ordering the MSOP to permanently discontinue the unconstitutional B.E.R. policies, and any other relief as this Honorable Court sees fit.


I hereby certify under penalty of perjury that the above petition is true to the best of my information, knowledge and belief.

Signed this _____09th_____ day of January, 2012.


Signature(s) of Plaintiff(s)   _Wallace J Beaulieu_____

Wallace James Beaulieu